OPINION OF THE COURT
John A. Milano, J.
PRELIMINARY STATEMENT
Petitioner, Muriel Russell, was appointed by respondent Chancellor Fernandez as a trustee of Community School District 27 in the Borough of Queens. Petitioner was removed from her position as trustee after an investigation by the Special Commissioner of Investigation for the New York City School District concluded that she had engaged in political deal making in connection with the selection of a superintendent for Community School District 27. Petitioner brings this proceeding pursuant to CPLR article 78, alleging that she was removed from that position without being given an opportunity for a hearing and/or appeal under Education Law § 2590-l and that she had not been afforded the right to be represented by counsel in her testimony before the Special Commissioner of Investigation. Respondents contend that petitioner had no entitlement to an appeal before the Board of Education because she was not an elected school board member. Rather, as a trustee, she served at the pleasure of the Chancellor. Further, that petitioner, in testifying before the Special Commissioner had no right to be represented by counsel because Special Commissioner’s functions are purely investigatory, rather than adjudicatory. The respondents further contend that their actions did not deprive petitioner of a liberty interest without due process; that the findings of the Special Commissioner did not implicate any liberty interest of petitioner because respondents allege they did not impose any stigma on petitioner that will foreclose her from future employment opportunities or any other tangible interest, and that even assuming that respondents’ actions did implicate a liberty interest, petitioner was afforded an opportunity to respond to the Special Commissioner’s report before it was released and before the Chancellor acted on the Special Commissioner’s recommendation.
ISSUE
The issue before this court is whether the actions taken by the said respondents and the opportunity stated to have been *140 given the petitioner to respond to the charges, specifications and findings contained in the said report fully satisfy all of the requirements of due process as a matter of public policy as it relates to statutory and constitutional safeguards.
This court concludes that it does not.
FACTS
Petitioner in 1973 graduated cum laude from Nazareth College of Rochester with a Bachelor of Arts degree. The mother of three children, petitioner has been active in community, civic and educational associations. Despite her interest in educational matters the petitioner contends that she could not be described as politically active or interested in organized traditional political venues. Her interest was her children and the school system they attended.
That beginning in October 1986, petitioner was a member of the Parent Association of Public School 56Q and that petitioner held positions as publication chairperson, president, and recording secretary of the Parent Association of Public School 56Q.
In October 1989, the Joint Commission of Integrity in the Public Schools (Gill Commission) conducted public hearings which uncovered evidence of widespread corruption and misconduct on the part of the members of Community School District 27. In response to the evidence of misconduct uncovered by the Gill Commission, Chancellor Bernard Mecklowitz suspended Community School District 27 on October 30, 1989. Pursuant to Education Law § 2590-l, Chancellor Mecklowitz selected and installed three employees of the New York City Board of Education to serve as trustees to assist the community school district superintendent in the administration of the educational affairs of the school district. The tripartite panel was to remain within District 27 until a parents’ committee established for the purpose of recommending trustees to fill the unexpired term of the ousted community school board member made its endorsements, and the Chancellor replaced them with trustees from the community.
In January 1991, Chancellor Joseph Fernandez established the Committee to Recommend Trustees for District 27 in order to select nine community trustees. A notice for applications for trustees of Community School District 27 was distributed at the direction of the Chancellor. In response to this notice petitioner submitted an application for consideration *141 for selection as a trustee of Community School Board 27. This application was submitted, in accordance with procedure, prior to February 14, 1991. The Chancellor established a committee to review the applications and to interview candidates. Subsequently, Chancellor Joseph F. Fernandez advised the petitioner that the said committee has recommended her as one of the candidates and that the said Chancellor had accepted her as designated community trustee effective May 23,1991.
Petitioner alleges and as the affidavit of Ms. Russell attests, during every training session conducted by the Office of Community School District Affairs, the trustees were advised that they had the same rights, duties and responsibilities as members of a community school board. That in sum and substance, no distinction was made from the date of assuming of office between the role of a trustee and the role of an elected community school board member.
In or about July 1991, the community school district trustees began the process associated with the selection of a community school district superintendent. The trustees, in accord with regulation and policy, established a selection committee consisting of each of the trustees, parents and designees from the United Federation of Teachers and the Council of Supervisors and Administrators.
That the final list of five candidates for superintendent of District 27 was submitted to the nine trustees for a vote, that no candidate initially received a majority and that petitioner and the president of the Board of Trustees, James Sanders, voted for Dr. Beverly Hall.
Petitioner alleges that following this initial vote, each board member, in alphabetical order, expressed his or her opinion of the candidates. That it soon became apparent, based upon the comments of the board members, that of the five finalists, only two were receiving consideration. The four minority members on the school board wanted a minority superintendent and statements were made that only a minority superintendent would receive minority support. That of the five white trustees, only Ms. Russell, despite the fact that she had cast a vote for Dr. Hall, was undecided, the other four trustees wanted to select a white candidate to serve as superintendent of schools. That in the early morning hours on Tuesday, December 17, 1991, a second vote was taken. That once again the vote was cast in alphabetical order. Ms. Russell was the third vote, of *142 the necessary five votes for Dr. Hall. Dr. Hall, in executive session, received the majority of school board votes. Ms. Russell, consistent with her first vote, was the sole white supporter for Dr. Hall, who throughout the evening stated that she was torn between the candidates. That she decided to support Dr. Hall because of her belief that a minority superintendent would have greater success in attracting and keeping minority pedagogues within the community school district.
That petitioner was presented with accusations and developments associated with the proposed appointment of Dr. Hall.
That a confidential source informed the Office of the Special Commissioner of Investigation that petitioner had stated to James Sanders that she would vote for Dr. Hall as superintendent if Sanders would resign as president of the Board of Trustees of Community School District 27.
The Office of the Special Commissioner of Investigation conducted an investigation that included interviews of each of the school board trustees.
Respondents deny and petitioner alleges that both in advance of her meeting with the Office of the Commissioner of Investigation and during the interview, petitioner was advised that she was not the subject of the investigation. That based upon the foregoing, petitioner did not bring counsel or representative with her.
That by letter dated February 4, 1992, Chancellor Fernandez requested that petitioner come to his office on February 5, 1992 to discuss the findings of the Special Commissioner of Investigation. That she was not informed of the actual purpose of the meeting but rather that the meeting involved the report of the Commissioner of Investigation.
Petitioner alleges that during this meeting with the Deputy Chancellor on February 5, 1992, petitioner was given, for the first time, a copy of the report of the Commissioner of Investigation. Petitioner was given the opportunity to read the report and offer whatever comments she thought appropriate.
Petitioner alleges that at the conclusion of the meeting, petitioner was advised that she was being removed from her office as trustee.
That petitioner sought to appeal the determination of the Chancellor to the City Board of Education pursuant to the provisions of Education Law § 2590-Z.
That in a letter dated March 16, 1992, and received subsequently, the respondent Board of Education determined not to *143 provide petitioner with a hearing regarding her removal from office. Respondents affirmatively state that petitioner had no right to appeal her removal from the Board of Education pursuant to Education Law § 2590-l (2) because she was not an elected community school board member but rather was a trustee appointed by the Chancellor pursuant to Education Law § 2590-Z (1) (a).
ANALYSIS
Petitioner alleges that she requested but was not granted an appeal pursuant to Education Law § 2590-l (2). Education Law § 2590-Z provides that if the Chancellor determines that any community school board has failed to comply with any applicable provisions of law, bylaws, rules or regulations, directives or agreements, he may supersede the board and appoint trustees to carry out the powers and duties of the community school board member.
Education Law § 2590-/ (2) provides as follows: "The community board or any suspended or removed member thereof may, within fifteen days after issuance of such [supersession order], file an appeal with the city board acting as an appeal board pursuant to subdivision ten of section twenty-five hundred ninety-g.”
Petitioner also contends that she is entitled to enjoy the same procedural protections enjoyed by elected community school board members because she was allegedly told by employees of the City Board’s Office of Community School District Affairs that the Chancellor’s trustees enjoyed the same rights, duties and responsibilities as elected community school board members. However, estoppel is generally not available against a governmental agency in the exercise of governmental functions. (See, Scruggs-Leftwich v Rivercross Tenants’ Corp., 70 NY2d 849, 852 [1987] [where the Court held that "(generally, estoppel may not be invoked against a municipal agency to prevent it from discharging its statutory duties”]; Matter of E. F. S. Ventures Corp. v Foster, 71 NY2d 259 [1988]; Matter of Parkview Assocs. v City of New York, 71 NY2d 274 [1988].) But it is to be noted by this court that Education Law §2590-/ (2) concerns itself more with a due process procedural right afforded to certain parties in standing than a statute imposing certain governmental obligations and functions.
In any event, it would appear that the statutory language of *144 Education Law § 2590-Z (2) refers to community school board members who are elected officials. But an anomalous situation is created herein where a member is replaced by a trustee and then allegations of misconduct are directed against the trustee. In the instant case all of the board members were replaced by nine trustees for the purpose of selecting a superintendent. In some cases some but not all board members may be replaced by some trustees. A situation may arise where allegations of misconduct are leveled against both the remaining board member and the trustees appointed to replace the former superseded members. Would a reasonable interpretation of the statute permit only the board members to file an appeal with the City Board but restrict procedural due process rights of the trustees simply because they are not elected board members? The Legislature perhaps failed to perceive a situation such as this. This court is reluctant to judicially legislate the rights of appeal of trustees not specifically referred to in Education Law § 2590-Z (2) but it must also take notice of the fact that trustees, when they assume the duties of community school board members with the same powers and responsibilities are similarly situated. In the instant case, there would be no problem if the petitioner trustee was removed by the Chancellor without cause and with no cloud of suspicion hanging over her head. But here, her removal was based allegedly on cause leveled against her by the Special Commissioner of Investigation for the New York City School District concerning an investigation into alleged misconduct compromising the integrity of the selection of the superintendent for Community School District 27, the effect which, as petitioner alleges, stigmatized her without any chance or opportunity afforded to her to respond appropriately.
EQUAL PROTECTION OF THE LAWS
Where a statute is challenged as denying equal protection and a fundamental interest or suspect classification is not involved, the standard by which classification is measured to determine whether or not it will pass constitutional muster is the “reasonable basis” test and under such traditional protection analysis, legislation will pass constitutional muster if the governmental classification is based upon some conceivable and legitimate State interest. (Maresca v Cuomo, 64 NY2d 242 [1984], appeal dismissed 474 US 802.)
The classification must be reasonable, not arbitrary, and *145 have a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced shall be treated alike. (People v Castro, 119 Misc 2d 787.) And when a statute is constitutionally defective because of underinclusion, the court may either strike the statute, and thus make it applicable to nobody, or extend the coverage of the statute to those formerly excluded. (People v Liberta, 64 NY2d 152, cert denied 471 US 1020.)
The question that distinctions of law raises is whether it can be argued that there is a rational basis for affording an ousted community school board member a right of appeal and denying an ousted trustee similarly circumstanced, the same right of appeal. This court is of the belief that there is no rational basis that can justify precluding the petitioner trustee from exercising her right of appeal under the facts and circumstances hereinbefore and pursuant to Education Law § 2590-Z (2), which in the opinion of this court is a due process procedural device designed to afford those similarly affected by adverse administrative decisions an opportunity to respond and right the wrong.
LIBERTY INTEREST
The Supreme Court has long recognized that the liberty interest protected by the Fourteenth Amendment denotes more than bodily restraint. (Board of Regents v Roth, 408 US 564, 572, 573 [1972], citing Meyer v Nebraska, 262 US 390, and Wisconsin v Constantineau, 400 US 433.) The Court in Roth recognized that when a government employee is discharged, the individual’s interest in his or her "good name, reputation, honor or integrity,” as well as the individual’s interest in avoiding a stigma or other disability that forecloses other employment opportunities, may be implicated. The Court found that no due process was necessary where the teacher was nontenured. The Court reasoned that lack of tenure, without more, was an insufficient interest in property to trigger the due process guarantees of fair notice and an opportunity to be heard. The Court stated (supra, at 573-574): "The State in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For '[w]here a person’s good *146 name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential.’ * * * Similarly, there is no suggestion that the State, in declining to re-employ the respondent, imposed on him a stigma or other disability that foreclosed his freedom to take advantage of other employment opportunities * * * Had it done so, this, again, would be a different case. For '[t]o be deprived not only of present government employment but of future opportunity for it certainly is no small injury’.”
And in Matter of Knutsen v Bolas (114 Misc 2d 130 [Sup Ct, Erie County 1982], affd 96 AD2d 723, lv denied 60 NY2d 557), petitioner Deputy Sheriff, who enrolled in a program at a police training academy in order to qualify for reassignment and was dismissed from the academy for cheating after two instructors reported observing such a violation, a situation which received significant press coverage, was deprived of liberty, within the meaning of the Fourteenth Amendment in that her good name, reputation, honor and integrity were placed at stake and therefore, the court reasoned, she must be afforded due process of law, which required that she be given written notice of the charges, specifying the offense and the evidence tending to show the offense, a hearing before an impartial decision maker with sufficient notice to allow for the retention and presence of counsel, an opportunity to present a detailed defense to the charges and an opportunity to cross-examine her accusers. Since the respondents did not afford the petitioner sufficient notice of the hearing to allow her to obtain counsel and the only hearing, if any, took place on the day after the incident occurred, the court held that a rehearing was necessary before the petitioner could be dismissed.
In the instant case, the Deputy Commissioner and the Chancellor publicized their findings. In the Commissioner’s report, the petitioner was referred to in terms that portrayed her at best as a Machiavellian political opportunist who, sacrificing all integrity, wheeled and dealed in order to get herself elected to the school board. Such a portrayal coupled with her removal from her post, stigmatized her in the community and foreclosed any opportunity for Ms. Russell to pursue the same public office or for that matter any other public office. The said petitioner not only lost her position but she also lost her standing in the community and has had to bear the stigma of removal. She has had to bear the indigni *147 ties visited upon her not only in private but in public due to the media attention targeted upon her.
Whether or not Ms. Russell had a property interest is subject to various interpretations, but this court recognizes and holds that the findings of the Special Commissioner which included, inter alla, a conclusion that Ms. Russell had disregarded her special responsibilities as an appointed trustee to a board recovering from scandal, compromised the integrity of the selection process for the superintendent of District 27, embodying racial overtones, with a recommendation that she be removed from her position as trustee of District 27, did implicate a liberty interest and as such triggers the procedural protections required under the Due Process Clause.
DUE PROCESS
This court already having decided that the principle of equal protection of the laws mandates a right of appeal to the petitioner pursuant to Education Law § 2590-l (2) and further that a liberty interest is implicated protected by the Fourteenth Amendment of the United States Constitution, the remaining question to be decided is whether due process was satisfied solely by the opportunity petitioner received to review and comment on the Special Commissioner’s report. "Certain principles have remained relatively immutable in our jurisprudence. One of them is that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government’s case must be disclosed to the individual so that he has an opportunity to show that it is untrue.” (Greene v McElroy, 360 US 474, 496 [1959].)
In this case, Muriel Russell was seriously injured by governmental procedures as such. She was never presented with the evidence against her in such a meaningful way as to have the reasonable opportunity to show its untruth. Allowing her to read the report against her without giving her time to study the report and meaningful time to refute the allegations as opposed to merely commenting on same, is not sufficient presentation.
Petitioner affirms in her affidavit of June 23, 1992 that at the conclusion of the February 5, 1992 meeting, she was advised that she was being removed from her office as a trustee. In a letter dated February 6, 1992, Chancellor Fernandez advised petitioner that he was removing petitioner *148 from her position as a trustee. This court concludes that this "procedure” of review and comment and the time frame that ensued substantially violated the minimum standard of due process.
CONCLUSION
If this matter had gone to appeal before the City Board, the actions and decision of the City Board would have been subject to article 78 review as to whether said Board had acted in an arbitrary or capricious manner. But that question is not before this court, which takes no position on the substantive aspects of this case as it relates to the petitioner, Muriel Russell. The thrust of this decision is focused on the procedural due process aspects of the matter which if satisfied in accordance with constitutional, statutory and precedential principles, would permit the said Muriel Russell to have her day in court. It is the opinion of this court that the summary dismissal of the said petitioner by the Chancellor without a hearing or an opportunity to respond to certain allegations of wrongdoings resulting in petitioner’s stigmatization both among her colleagues and in her personal life, violated said petitioner’s due process rights and accordingly, the court grants the petitioner her right to appeal to the City Board, concerning the February 1992 findings, conclusions and recommendations of the Special Commissioner of Investigation for the New York City School District.
The City Board of Education is directed to expedite and arrange the said appeal at their earliest convenience, but not exceeding 60 days from the service of a copy of this opinion and order.