OPINION OF THE COURT
Michael H. Feinberg, J.
Petitioner was first employed by respondent New York City Board of Education on October 30, 1989 to provide administrative assistance to community school districts in Brooklyn. At a public meeting held on February 16, 1994, the Community School Board of District 17 passed a resolution appointing petitioner to the position of Director of Operations.
On November 30, 1994 Chancellor Cortines suspended the entire Community School Board of District 17. In its place, he appointed a five-member Board of Trustees and endowed them with all the powers and duties of community school board members. In the same action, he appointed Barbara Byrd-Bennett District Administrator of Community School Board 17.
On December 1, 1994, Ms. Byrd-Bennett requested that the Office of Auditor General perform an audit of the district’s expenditures. By February 17, 1995, a preliminary draft report covering the period from July 1, 1993 to December 30, 1994 had been prepared and was sent to Chancellor Cortines. The Chancellor forwarded the draft to Ms. Byrd-Bennett.
The report identified several incidents of administrative misconduct and recommended "immediate disciplinary measures” against petitioner and other employees.
Despite the fact that the report was labeled in large bold letters "DRAFT — SUBJECT TO REVISION — NOT FOR EXTERNAL RELEASE”, the contents of the report were released to the media. On March 14, 1995, the Carib News Week published an article entitled "Who Will Take $170,000 Fall? Board of Ed Probe: Mismanagement and Fiscal Improprieties.” "A first draft of the confidential audit, conducted by James R. Coney, Auditor General, points to fiscal improprieties, gross mismanagement of the district’s finances and outright theft of equipment, including computers, books and camera earmarked for the various schools of the district * * * The people who might be left holding the hot iron are: Director of Operations at Community School District 17, Michael Okebiyi [and others].”
*1010 On March 27,1995, Ms. Byrd-Bennett terminated petitioner’s employment as Director of Operations for District 17. On June 20, 1995, petitioner requested a hearing to challenge his termination and a hearing to clear his name. Both were denied by Lawrence E. Becker, counsel to the Chancellor.
Petitioner, in this CPLR article 78 petition, seeks reinstatement and a name-clearing hearing. He asserts that respondents violated Education Law § 2566 (6). This section sets forth the official procedure for discharging a Board of Education employee: "to report to said board of education violations of regulations and cases of insubordination and to suspend [him] * * * until the next regular meeting of the board, when all facts relating to the case shall be submitted to the board for its consideration and action” (emphasis supplied).
Petitioner asserts further that Public Officers Law § 102 requires that a Board of Education may take such action only at meetings which are open to the public.
Finally petitioner contends that his due process rights were violated when he was denied a hearing to clear his name because his reputation was damaged by respondent’s negligence in permitting the news media to learn of and thereafter disseminate the contents of a confidential preliminary audit draft.
Respondents concede that the District Administrator did not comply with the law requiring suspension of petitioner pending presentation of the facts at a formal meeting. However, they argue that the objectives of the statute were accomplished because the District Administrator consulted with the other trustees and they advised her to terminate petitioner. Finally, respondents contend petitioner has not met the standard for entitlement to a name-clearing hearing.
The question before the court is twofold: (1) Did respondents violate Education Law § 2566 (6) by failing to suspend petitioner at a duly noticed public meeting of the Trustees of Community School Board 17; (2) Was petitioner deprived of a liberty interest by respondent’s dissemination of stigmatizing allegations, thereby entitling him to a name-clearing hearing?
The court finds in the affirmative to both questions.
The purpose of the statute, Education Law § 2566 (6), is to protect persons from being deprived of their employment by unilateral action of the superintendent without ratification of such action by the Board of Education (see, Matter of Auerbach, 75 NY St Dept Rep [Educ Dept] 172). The appointment or the discharge of a person in a noncompetitive position such *1011 as petitioner’s must be determined by a resolution of the community board after the question has been put to a formal vote (see, Ambrose v Community School Bd. No. 30, 74 AD2d 870; see also, Public Officers Law § 102).
It is of no moment that Ms. Byrd-Bennett informally "conferred” with certain members of the Board of Trustees or that they "proposed that she terminate petitioner’s services.” The Board may not delegate its statutory duty to a superintendent or to a district administrator (see, Matter of Petruzillo, 27 Ed Dept Rep 325 [1988]), and it is beyond the power of the individual members of the Board of Trustees to alter the statutory provision (see, Matter of Union Free School Dist. No. 2 v Nyquist, 38 NY2d 137).
As to whether petitioner has a right to a name-clearing hearing, the case law is clear. A government employee is deprived of a liberty interest where his employment has been terminated based on allegations which place, at stake, his name, reputation, honor and integrity (see, Matter of Knutsen v Bolas, 114 Misc 2d 130). There is no doubt that the allegations from the report that were quoted in the newspaper article, i.e., "fiscal improprieties, gross mismanagement and outright theft” are stigmatizing (see, Brandt v Board of Coop. Educ. Servs., 820 F2d 41, 43). Contrary to respondent’s assertion that petitioner must establish the falsity of the charges, in order to be entitled to a name-clearing hearing, petitioner is not required to do so, because that is the function of the hearing itself (see, O’Neill v City of Auburn, 23 F3d 685).
This court takes no position on the substantive aspects of this case as related to petitioner. The thrust of this opinion is focused on the procedural due process aspects of the matter which, if satisfied in accordance with constitutional statutory and precedential principles, would permit petitioner to have his day in court (see, Matter of Russell v Fernandez, 158 Misc 2d 138, 148).
Accordingly, this article 78 petition is granted to the extent that the matter is remanded to the office of Chancellor Cortines to provide for a name-clearing hearing wherein petitioner is represented by counsel of his choice and is given an opportunity to examine all reports, face his accusers and, if possible, refute the charges. Further, the Board of Trustees is directed to convene a "regular [i.e., public] meeting” as *1012 required by Education Law § 2566 (6) at which petitioner’s retention or termination of employment is put to a formal vote for resolution by the Board of Trustees of Community School Board District 17.